**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 25-1570**

─────────────

TIMOTHY DASHAUN TAYLOR,

    Plaintiff – Appellant,

    v.

UNITED STATES OF AMERICA,

    Defendant – Appellee.

─────────────

Appeal from the United States District Court for the District of South Carolina, at Charleston.  Bruce H. Hendricks, District Judge.  (2:24-cv-01440-BHH)

─────────────

Argued:  May 5, 2026                    Decided:  August 11, 2026

─────────────

Before DIAZ, Chief Judge, and HARRIS and BENJAMIN, Circuit Judges.

─────────────

Affirmed by unpublished opinion.  Judge Harris wrote the opinion, in which Chief Judge Diaz and Judge Benjamin joined.

─────────────

**ARGUED:**  Matthew Ryan McKaig, MCKAIG LAW FIRM LLC, Charleston, South Carolina, for Appellant.  Kimberly Varadi Hamlett, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Appellee.  **ON BRIEF:**  Bryan P. Stirling, United States Attorney, Joanna B. Stroud, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Appellee.

─────────────

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

Plaintiff Timothy Dashaun Taylor, a black man, alleges that he faced a years-long, highly public FBI investigation for the notorious kidnapping and murder of a young white woman. As alleged, the FBI investigated and publicly accused Taylor of this crime despite the fact that FBI agents knew he was not the perpetrator, and even as they neglected to pursue the white man who ultimately confessed to the crime. Taylor sued the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680, for economic and emotional damages stemming from the FBI's allegedly faulty investigation.

The district court dismissed Taylor's suit on multiple grounds, relying chiefly, but not exclusively, on the FTCA's "discretionary function" exception. On appeal, Taylor fails to challenge the court's dispositive rulings. For that reason, we must affirm the district court's dismissal of Taylor's complaint.

## I.

### A.

We briefly recount the troubling allegations in Timothy Taylor's complaint, which at this stage we accept as true and construe in the light most favorable to Taylor. *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

In April 2009, a 17-year-old woman named Brittanee Drexel went missing in Myrtle Beach, South Carolina. That day, Timothy Taylor (whom we refer to as "Taylor") and his father, Shaun, two black men, were at a car show almost four hours south of Myrtle Beach. Meanwhile, a white couple, Raymond Moody and Angel Vause, were in Myrtle Beach.

2

Thirteen years later, Moody – who in 2009 was already a convicted "serial rapist and kidnapper who had victimized at least seven girls" –admitted to kidnapping and killing Drexel. J.A. 10.

But when local and state police began investigating Drexel's disappearance, they started with then-16-year-old Taylor and his father, based on what Taylor alleges was unreliable evidence. Eventually, investigators confirmed the Taylors' car-show alibi and stopped pursuing them. And according to Taylor, local and state authorities became convinced that Moody had committed the crime but felt they lacked sufficient evidence to arrest him. So the case went cold.

About five years later, the FBI launched its own investigation. The FBI's agents, Taylor says, knew of his confirmed alibi and local law enforcement's belief that Moody was the culprit. Nevertheless, the FBI credited an incarcerated "violent convict" – deemed unreliable by state and local officials – who accused the Taylors of the crime without corroboration. J.A. 35. And then, because they lacked probable cause to arrest Taylor in connection with Drexel's disappearance, the FBI instead instigated federal charges against Taylor for a McDonald's robbery that occurred five years earlier – a crime to which Taylor had pled guilty in state court and for which he had served probation. According to Taylor, the FBI used these federal charges as "pretext" to arrest him and pressure him to confess to Drexel's murder. J.A. 38.

The FBI compounded the harm at Taylor's 2016 bail hearing on the federal robbery charges, when an FBI agent testified that Taylor was dangerous and should not be released because he was being investigated for "kidnapping, human trafficking and murder" in

3

connection with the Drexel case. J.A. 40 (internal quotation marks omitted). According to Taylor, the agent spoke "at length" and "made sure to include the most sickening, gory, and outrageous details" collected from the FBI's jailhouse accuser. *Id.* The agent's testimony was later widely publicized in the media, inflicting "immediate, massive, and generational damage to the lives of every member of the Taylor family." J.A. 41. Taylor ultimately pled guilty to one count against him in the federal robbery case.

A few years later, in 2019, the FBI's case against the Taylors fell apart when the jailhouse accuser changed his story, and the FBI ruled out Taylor and his father as suspects. But the FBI did not publicize that fact or correct its 2016 testimony identifying Taylor as a suspect. Only three years later, in 2022, did the harm to the Taylors finally end, when the FBI returned to the Moody lead and Moody pled guilty to Drexel's murder.

B.

Taylor filed this suit under the Federal Tort Claims Act for harms caused by the FBI agents who investigated him and his father. The FTCA waives the United States's sovereign immunity for certain claims against the United States "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). In such suits, the government can be held liable to the same extent as a private person would be "in accordance with the law of the place where the act or omission occurred." *Id.* Because the conduct challenged in Taylor's suit occurred in South Carolina, Taylor's complaint alleges three South Carolina torts: abuse of process, intentional infliction of emotional distress, and negligence/gross negligence.

4

The district court dismissed Taylor's suit on multiple grounds. *Taylor v. United States*, 2025 WL 1453961 (D.S.C. Mar. 21, 2025). Centrally, the court relied on the FTCA's "discretionary function exception," *id.* at \*6, which carves out from the FTCA's general waiver of sovereign immunity claims that are "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved be abused," 28 U.S.C. § 2680(a). The district court reasoned, first, that the FBI agents' conduct in investigating and helping to prosecute Taylor on federal robbery charges implicated "criminal law enforcement decisions," which "necessarily involved discretionary judgments or choices." *Taylor*, 2025 WL 1453961, at \*7. And it held, second, that the agents' discretionary choices were grounded in public policy and thus "of the kind that the discretionary function exception was designed to shield." *Id.* at \*6–7 (quoting *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 537 (1988), and applying its two-step analysis).

Critically, the district court agreed with Taylor that conduct that violates the Constitution is not shielded by the discretionary function exception. *Id.* at \*7 (citing *Medina v. United States*, 259 F.3d 220, 225 (4th Cir. 2001)). But Taylor, the district court found, had not adequately alleged either of the constitutional violations alluded to in his complaint: that he was subject to racially selective law enforcement in violation of equal protection principles or that his due process rights were violated by the FBI agents' abuse of process. *Id.* at \*8. Taylor's "cursory" and "unsupported" references to the Constitution, the court concluded, were insufficient to allege plausible constitutional violations. *Id.* Accordingly, Taylor's FTCA suit was barred by the discretionary function exception,

5

which meant that it was subject to dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *Id.* at *9; *see Blanco Ayala v. United States*, 982 F.3d 209, 214 (4th Cir. 2020) (explaining that the "exceptions to the FTCA's immunity waiver work to defeat the subject matter jurisdiction of the federal courts").

In addition, the district court adopted two alternative holdings that reinforced its dismissal. First, it held that, to the extent Taylor's claims focused on the federal robbery charges against him – to which he had ultimately pled guilty – those claims were barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because recovery of damages would call into question the validity of a conviction that had not been overturned or otherwise invalidated. *Taylor*, 2025 WL 1453961, at *8 n.4. And second, to the extent Taylor's claims arose out of the FBI's disclosure of information incorrectly implicating him in the Drexel case – for instance, the FBI agent's testimony at the 2016 bond hearing – those claims were barred by the FTCA's defamation exception. *Id.* at *8 n.5; *see* 28 U.S.C. § 2680(h) (barring FTCA claims "arising out of . . . libel, slander, misrepresentation, [or] deceit"). Finally, the district court held that if it were to reach the merits of Taylor's action, it would agree with the government that his claims were barred by the applicable two-year statute of limitations. *Taylor*, 2025 WL 1453961, at *9 n.6.

Taylor timely appealed the district court's dismissal of his action.

## II.

We review de novo the district court's dismissal for lack of subject matter jurisdiction under the FTCA's discretionary function exception. *Blanco Ayala*, 982 F.3d

6

at 213.  To decide whether the discretionary function exception applies, we ask two questions.  First, we determine whether the conduct involves "discretionary judgment." *Suter v. United States*, 441 F.3d 306, 311 (4th Cir. 2006).  If so, then we determine "whether that judgment is of the kind that the discretionary function exception was designed to shield, *i.e.,* whether the challenged action is based on considerations of public policy." *Id.* (citation modified).  But in this appeal, we need not resolve any difficult questions about the scope of the discretionary function exception, because Taylor has not challenged the district court's dispositive holding as to its application in his case.  *See McCray v. Fed. Home Loan Mortg. Corp.*, 839 F.3d 354, 362 (4th Cir. 2016) ("When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed." (internal quotation marks omitted)).

The district court's ruling on the discretionary function exception, recall, proceeded in three steps.  First, the court held that the alleged FBI conduct underlying Taylor's claims fell within the general scope of the exception because it involved an "element of judgment or choice" that was "based on considerations of public policy." *Taylor*, 2025 WL 1453961, at *6–7 (internal quotation marks omitted).  On appeal, Taylor does not seem to dispute that conclusion.  And properly so.  We have made clear that "the investigation of (potential) crimes is a discretion-laden subject" as to which the discretionary function exception generally applies.  *Blanco Ayala*, 982 F.3d at 215 (internal quotation marks omitted); *see also Medina*, 259 F.3d at 229.

7

Next, the district court ruled that the discretionary function exception nevertheless would be inapplicable if the FBI conduct in question were alleged to have violated the Constitution. *Taylor*, 2025 WL 1453961, at *7. The parties appear to agree on that point, too. Taylor, naturally, endorses this step of the district court's reasoning. And in its brief, the government acknowledges and takes no issue with this court's analysis in *Medina*, in which we identified "the bounds of the discretionary function exception" by starting "with the principle that federal officials do not possess discretion to violate constitutional rights or federal statutes." 259 F.3d at 225 (internal quotation marks omitted).[1]

That leaves the final step in the district court's analysis: that Taylor could not avail himself of this limit on the discretionary function exception because he failed to plausibly allege a constitutional violation, raising only "cursory allegations" of such violations in his

---

[1] Several other federal courts of appeals have held that unconstitutional conduct falls outside the discretionary function exception. *See, e.g.*, *Nurse v. United States,* 226 F.3d 996, 1002 & n.2 (9th Cir. 2000)*; Raz v. United States*, 343 F.3d 945, 948 (8th Cir. 2003); *Limone v. United States*, 579 F.3d 79, 101 (1st Cir. 2009)*; Loumiet v. United States*, 828 F.3d 935, 944 (D.C. Cir. 2016); *Xi v. Haugen*, 68 F.4th 824, 829 (3d Cir. 2023). But two federal circuits have reached a contrary conclusion, holding that unconstitutional conduct may be covered by the exception. *See Linder v. United States*, 937 F.3d 1087, 1090–91 (7th Cir. 2019); *Shivers v. United States*, 1 F.4th 924, 930 (11th Cir. 2021). The Supreme Court recently acknowledged this conflict but declined to resolve it. *See Martin v. United States*, 605 U.S. 395, 414–15 (2025).

Perhaps in light of this conflict, the government at oral argument for the first time suggested disagreement with the majority rule treating unconstitutional conduct as outside the scope of the discretionary function exception. We have no occasion to revisit that issue now; it is neither properly presented nor dispositive, and our court already has opined on it.

complaint. *Taylor*, 2025 WL 1453961, at *8. Critically, Taylor does not contest that holding on appeal. Instead, he devotes much of his briefing to the threshold proposition – adopted by the district court – that a properly alleged constitutional violation would fall outside the discretionary function exception. He nowhere takes issue, however, with the district court's holding that there *was* no properly alleged constitutional violation in this case, or explains why that holding was mistaken by, say, pointing to allegations in his complaint that he believes *do* sufficiently allege a constitutional violation.

Taylor does, in his brief, recite the facts and reasoning of *Limone v. United States*, 579 F.3d 79 (1st Cir. 2009), in which the First Circuit sustained an award of damages under the FTCA where the plaintiffs proved that "FBI agents had participated in framing them" for murders of which they were convicted and had "withheld exculpatory evidence to cover up their malefactions," all in "clear violation of due process," *id.* at 102. Because the proven conduct was unconstitutional, the court held, it was outside the scope of the discretionary function exception. *Id.* at 101–02. To the extent Taylor relies on that case for the legal proposition that the discretionary function exception does not shield unconstitutional conduct, it does not advance his appeal because, again, the district court did not dispute that proposition. And *Limone* does nothing to show that Taylor sufficiently alleged specific constitutional violations in his complaint, because *Limone* involved very different facts and a constitutional violation – a due process violation under *Napue v. Illinois*, 360 U.S. 264 (1959), *see Limone v. Condon*, 372 F.3d 39, 45 (1st Cir. 2004) – that is not implicated here. *See Taylor*, 2025 WL 1453961, at *7–8 (distinguishing facts of *Limone* from Taylor's case).

9

Because Taylor does not challenge the district court's dispositive ruling with respect to the discretionary function exception, we must affirm that ruling on appeal. *See McCray*, 839 F.3d at 362. That alone requires affirmance of the district court's dismissal of Taylor's FTCA action for lack of subject matter jurisdiction. But we note that Taylor also does not challenge on appeal the district court's alternative grounds for dismissal – the *Heck* bar and the FTCA's defamation exception, *see Taylor*, 2025 WL 1453961, at *8 nn.4–5 – or respond to the government's argument that those holdings, too, would together preclude all of Taylor's claims.[2] *See United States ex rel. Ubl v. IIF Data Sols.*, 650 F.3d 445, 456 (4th Cir. 2011) ("[T]he failure of a party in its opening brief to challenge an alternate ground for a district court's ruling given by the district court waives that challenge." (internal quotation marks omitted)); *Alvarez v. Lynch*, 828 F.3d 288, 295 (4th Cir. 2016) ("Failure to respond to an argument results in waiver." (internal quotation marks omitted)). All told, though we appreciate the gravity of Taylor's allegations, in this posture, we have no choice but to affirm the district court's dismissal of Taylor's complaint.

## III.

For the foregoing reasons, we affirm the judgment of the district court.

---

[2] Given this posture, we need not and do not opine on the district court's rulings under *Heck* and the FTCA's defamation exception. And because we affirm the district court's dismissal of Taylor's complaint for lack of subject matter jurisdiction under the FTCA's discretionary function exception, we do not reach Taylor's argument that the district court erred in its alternative holding that his action is time-barred under the applicable two-year statute of limitations. *See Taylor*, 2025 WL 1453961, at *9 n.6.

10

*AFFIRMED*